UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETERBILT OF CONNECTICUT, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1575 (MRK) |
| | : | |
| FIRST FINANCIAL INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

This action arises out of an underlying breach of contract claim brought by Plaintiff Peterbilt of Connecticut, Inc. ("Peterbilt") against City Wide Roofing, Geno Lee, and Leo Lee (collectively "City Wide") in the Connecticut Superior Court. When City Wide failed to appear for its depositions, default judgment was entered against it. The Superior Court subsequently awarded Peterbilt three forms of damages: $35,143.84 for breach of contract; $162,400 in compensatory damages, and $21,674.20 in punitive damages. As City Wide has failed to pay these damages, Peterbilt has brought suit against its insurer, Defendant First Financial Insurance Co. ("First Financial"), under the Connecticut direct action statute. *See* Conn. Gen. Stat. § 38a-321. Pending before the Court is First Financial's Motion for Summary Judgment [doc. # 25]. As Peterbilt's estoppel claim fails, and as exclusions and requirements in the insurance policy bar recovery, First Financial has no obligation to pay City Wide's damages. Accordingly, First Financial's pending Motion for Summary Judgment [doc. # 25] is GRANTED.[1]

---

[1] First Financial had also filed a Motion to Strike Plaintiff's Exhibit B [doc. # 35]. After oral argument on September 7, 2011, the Court denied the motion.

# I.

The following facts are culled from the parties' Statement of Stipulated Facts [doc. # 28]; Local Rule 56(a) Statements [docs. # 27, 37], affidavits, and exhibits. Because this case is currently at the summary judgment stage, the Court presents the facts in the light most favorable to Peterbilt, the nonmoving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). All of the facts recited below are undisputed unless otherwise noted.

First Financial issued a Commercial General Liability Policy of Insurance with Policy No. 318F001496 to City Wide for the period from June 10, 2003 through June 10, 2004 (the "Policy"). The Policy has a number of exclusions and requirements: (1) the "property damage exclusion," which provides that First Financial will not insure "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations" or "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it,'" Statement of Stipulated Facts [doc. # 28-1] Ex. B at 33 (Commercial General Liability Coverage Form); (2) the "occurrence requirement," which states that insurance applies to "property damage" only if the "'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,'" *id.* at 30 (Commercial General Liability Coverage Form); (3) the "'Damage to Your Work' exclusion," which excludes from coverage "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard,'" *id.* at 33 (Commercial General Liability Coverage Form); (4) the "Cooperation Clause exclusion," which requires the insured to cooperate with First Financial "in the investigation or settlement of the claim or defense against the 'suit,'" *id.* at 38 (Commercial

General Liability Coverage Form); and (5) the "punitive damages exclusion," which provides that "[t]his insurance does not apply to any claim of or indemnification for punitive or exemplary damages . . . . [First Financial] will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages," *id.* at 19.

In early 2004, Peterbilt's employee Mario Furino began looking for a contractor to replace a leaking roof on the building located at 206 Meadow Lane, Berlin CT. He collected proposals from several contractors. One of his concerns was whether contractors carried liability insurance to cover "*any* damages that could occur as a result of the installation process." Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. A ¶ 4 (Affidavit of Mario Furino) (emphasis added). After receiving bids and narrowing the pool of potential contractors, Mr. Furino asked City Wide whether it had liability insurance that would cover damages that might result from the installation process. City Wide assured Mr. Furino that it did have such insurance and referred him to the Tacinelli Agency, Inc. ("Tacinelli") to obtain City Wide's insurance policy information.

Mr. Furino contacted and informed Tacinelli that he wanted information on insurance coverage for City Wide prior to accepting their bid because he "was concerned that the property . . . be protected for *any and all* damages that might result from the installation process." *Id.* Ex. A ¶ 7 (emphasis added). Tacinelli forwarded Mr. Furino a Certificate of Insurance, *see id.* Ex. B, which demonstrated that City Wide was insured by First Financial.[2] At no time did Tacinelli provide Mr. Furino with a copy of the Policy or inform him that the Policy had restrictions on the

---

[2] Although Mr. Furino claims that Tacinelli provided him with the Policy's declarations page, *see* Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. A ¶ 8 (Affidavit of Mario Furino), which does note that there are common policy conditions and coverage forms, *see* Statement of Stipulated Facts [doc. # 28-1] Ex. B at 8, it appears that Peterbilt was actually provided a Certificate of Insurance, *see* Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. B.

type of damages it would cover resulting from the installation of a new roof. Mr. Furino maintains that, had he "been provided with information regarding the limitations on liability coverage, that information would have influenced [his] decision to choose City Wide Roofing to perform the roofing installation." *Id.* Ex. A ¶ 11.

Peterbilt and City Wide entered into a written contract for a new roof, in which City Wide provided a written fifteen-year guarantee and warranty. In March 2004, City Wide commenced the installation of the new roof. Soon after the new roof was installed, it began to leak. City Wide "neglected, failed or refused to complete the necessary repairs." *Id.* Ex. A ¶ 13.

On October 2, 2006, Peterbilt brought suit (the "City Wide lawsuit") against City Wide, alleging that City Wide negligently installed a defective roof and that City Wide failed to honor its warranty. Sometime in late 2007 or early 2008, after City Wide failed or refused to attend several duly noticed depositions, the Superior Court granted Peterbilt's motion for default and proceeded to a hearing in damages.

First Financial was notified of the City Wide lawsuit. After the missed depositions, both Peterbilt and First Financial tried and failed to contact City Wide. First Financial then defended City Wide under a complete reservation of rights. Within ten days of the default, First Financial's counsel for City Wide filed timely notice of their intention to contradict certain allegations of the plaintiff's revised complaint.

On November 25, 2009, after a damages hearing, the Superior Court found that City Wide's defective roof installation "promote[d] increased leaking into the building through the 5,000 perforations [in the old roof] . . . . As a result, [City Wide's] use of screws to attach the ill-chosen fiberboard to the new roof promoted the failure of and leaking of water through that roof and the old roof below it." Statement of Stipulated Facts [doc. # 28-2] Ex. C at 11 (Mem. of

4

Dec.). The Superior Court held that City Wide breached its contract with Peterbilt "by installing a new roof that both failed to deliver on [its] promise and made the old roof, which leaked far less before the new roof was installed, fail as well." *Id.* Ex. C at 13.

The Superior Court awarded Peterbilt damages in the amount of the full contract price of $25,000.00 plus statutory interest of $10,143.84 for a total of $35,143.84. It also awarded Peterbilt $162,400.00 in compensatory damages for the cost of removal of the defective and damaged roofs and for the installation of a new roof. Finally, the Superior Court awarded Peterbilt attorney fees under the Connecticut Unfair Trade Practices Act (which were determined at a later hearing to be $21,674.20). At oral argument on September 7, 2011, Peterbilt's counsel stated that City Wide's actions damaged only the roofing system.

When City Wide failed to pay damages, Peterbilt brought suit against First Financial under Connecticut General Statutes § 38a-321 in a Connecticut Superior Court, Judicial District of Hartford. *See* Notice of Removal [doc. # 1] Ex. A. First Financial filed a Notice of Removal on October 5, 2010 to bring the case before this Court. *See id.* This opinion decides First Financial's Motion for Summary Judgment [doc. # 25], which was fully briefed by the parties. *See* Pl.'s Response [doc. # 29]; Def.'s Reply [doc. # 34].

## II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact"

is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477 U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006). The Court draws all inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *DeFabio*, 623 F.3d at 74.

Peterbilt admits all of First Financial's statements of material fact. *See* Pl.'s Local Rule 56(a) Statement [doc. # 37]. The only remaining disagreement—whether Tacinelli was First Financial's apparent agent—is irrelevant to the Court's analysis. As a result, summary judgment is appropriate at this juncture.

### III.

Peterbilt argues that First Financial is estopped from relying on defenses as to its policyholders because Tacinelli, First Financial's apparent agent, failed to provide the Policy's exclusions to Peterbilt at Peterbilt's request. As the Second Circuit recently clarified:

> Equitable estoppel in Connecticut has two elements: (1) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must change its position in reliance on those facts, thereby incurring some injury. *A person who claims an estoppel must show that he has exercised due diligence to know the truth*, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.

*Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 185 (2d Cir. 2011) (quotation marks, alteration, and citations omitted) (emphasis added).

When asked for information on City Wide's insurance coverage, Tacinelli provided Peterbilt with a one page document: a Certificate of Insurance. *See* Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. B. The document states that First Financial is providing commercial general liability coverage to City Wide for its roofing activities from June 10, 2003

through June 20, 2004 with various monetary limits.[3] It also notes that City Wide has a policy

for worker's compensation and employer's liability. The document provides little other

information, but it does include some boilerplate language noting that "[t]he insurance afforded

by the polices described herein is subject to all the terms, exclusions, and conditions of such

polices." *Id.*

Meanwhile, as one would expect from an insurance policy, a certified copy of the Policy

is approximately fifty pages long. *See* Statement of Stipulated Facts [doc. # 28-1] Ex. B. The

Commercial General Liability Coverage Form alone, which lists many of the relevant exclusions,

is thirteen pages. *See id.* Ex. B at 30-42 (Commercial General Liability Coverage Form).

Assuming – without deciding – that a reasonable jury could conclude from the facts on

the record that Tacinelli was an apparent agent of First Financial,[4] Peterbilt still could not

convince a reasonable jury that First Financial is estopped from asserting the defenses it would

otherwise be able to use against its policyholders. No reasonable jury could find that, if Peterbilt

was truly concerned about ensuring protection from "*any and all* damages that might result from

---

[3] For example, fire damage due to any one fire is limited to $100,000.

[4] Mr. Furino believed at the time that he received the Certificate of Insurance that Tacinelli acted "with authority from, under the direction of, and on behalf of First Financial," for whom, according to him, "it ostensibly issued the policy." Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. A ¶ 9 (Affidavit of Mario Furino).

Joseph Krar & Associates, Inc. ("K&A") is a contracted wholesale agent for First Financial and has binding authority to issue policies on First Financial's behalf. Joseph Krar, the president, acknowledges that City Wide procured the Policy through Tacinelli, and that the Policy was issued by K&A on behalf of First Financial. Mr. Krar maintains that City Wide was sent a certified copy of the Policy, which "consists of each and every form, exclusion, and endorsement contained in [K&A]'s files." Def.'s Reply [doc. # 34] Ex. 1 ¶¶ 7-8 (Affidavit of Joseph Krar).

Carla Fisher, who manages the Northeast Bind Underwriting Department for First Financial, states unequivocally that Tacinelli "is not presently and has not at any time: i) been a broker/agent of [First Financial]; or ii) had any agreement with [First Financial] by which [First Financial] authorized it to bind coverage on behalf of [First Financial] or otherwise act on [First Financial's] behalf." *Id.* Ex. 2 ¶ 4. Ms. Fisher also states that "First Financial has not represented that [Tacinelli] is or was its agent." *Id.* ¶ 5.

the installation process," Pl.'s Mem. in Opp'n to Mot. for Summary J. [doc. # 30] Ex. A ¶ 7 (Affidavit of Mario Furino) (emphasis added), it would have reasonably concluded that the one-page document summarized all important and relevant information in the Policy. Notwithstanding Mr. Furnio's comment to Tacinelli about his reasons for requesting the insurance coverage, Peterbilt has not demonstrated that it exercised the required due diligence to learn about the full extent of the insurance coverage, though it could reasonably have requested that information from City Wide as a condition of accepting City Wide's bid. *See Int'l Strategies Grp.*, 645 F.3d at 185. Therefore, even if Peterbilt relied on the Certificate of Insurance to its detriment, a reasonable jury would not find that such reliance was reasonable.

## IV.

"'[C]onstruction of a contract of insurance presents a question of law . . . It is the function of the court to construe the provisions of the contract of insurance.'" *Scottsdale Ins. Co. v. R.I. Pools, Inc.*, 742 F. Supp. 2d 239, 242 (D. Conn. 2010) (quoting *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 462 (2005)) (alteration in original). The Connecticut Supreme Court has provided standards for interpretation of an insurance policy:

> The interpretation of an insurance policy involves a determination of the intent of the parties as expressed by the language of the policy including what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy. A contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured.

*Hartford Cas. Ins. Co.*, 274 Conn. at 462 (quotation marks and alterations omitted).

The Connecticut direct action statute, under which Peterbilt brings its claim, provides in relevant part:

Upon recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of

. . . damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer *to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.*

Conn. Gen. Stat. § 38a-321 (emphasis added); *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 416 (2d Cir. 1990) (holding that Connecticut's direct action statute is substantive, rather than procedural, law). As its estoppel claim fails, Peterbilt has a right of action against First Financial to the same extent that City Wide would have had a right of action had it paid the judgment. Accordingly, First Financial may employ defenses it would have been able to use had the suit been brought by City Wide. *See Brown v. Employer's Reinsurance Corp.*, 206 Conn. 668, 673 (1988) ("A party subrogated to the rights of an assured under § 38-175 obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy.").

The Superior Court awarded Peterbilt three forms of damages: $35,143.84 for breach of contract; $162,400 in compensatory damages, and $21,674.20 in attorney fees under CUTPA. The Policy's punitive damages exception, the property damages exception, and the occurrence requirement bar Peterbilt from collecting these monies from First Financial.

## A.

The punitive damages exception bars Peterbilt from collecting $21,674.20 in attorney fees. The Policy provides that "[t]his insurance does not apply to any claim of or indemnification for punitive or exemplary damages . . . . [First Financial] will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages." Statement of

Stipulated Facts [doc. # 28-1] Ex. B at 19. First Financial maintains, and Peterbilt does not contest, that the attorney fees were awarded as punitive or exemplary damages. *See Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 97 (2d Cir. 1995) (finding that punitive damages under CUTPA are not limited to attorney fees). Furthermore, Peterbilt's counsel conceded at oral argument that, if the estoppel argument failed, Peterbilt would not be able to collect punitive damages. The Court agrees, and finds that, as a matter of law, First Financial does not have any indemnity obligation to Peterbilt with regard to the $21,674.20 in attorney fees.

## B.

The Policy provides that that First Financial "will pay those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Statement of Stipulated Facts [doc. # 28-1] Ex. B at 30 (Commercial General Liability Coverage Form). "Property damage" is defined under the Policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." *Id.* Ex. B at 42 (Commerical General Liability Coverage Form). Inexplicably, First Financial does not clarify – and Peterbilt understandably does not raise – the fact that the Policy also includes a property damage exclusion, which applies to "[t]hat particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations" or "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.'" *Id.* Ex. B at 33 (Commercial General Liability Coverage Form).

Even if the alleged damage to the old roof constitutes property damage, such injury falls squarely within the Policy's property damage exclusion: it would constitute injury to "[t]hat particular part" of the real property on which City Wide was "performing operations";

11

alternatively, it is "[t]hat particular part" of the building "that must be restored, repaired or replaced" because City Wide's work was "incorrectly performed." *See id.* As a result, First Financial has no indemnification obligation for damages arising out of injury to the old roof. *See Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of N.Y.*, 732 F. Supp. 2d 347, 365-66 (S.D.N.Y. 2010).

C.

The parties do not discuss the applicability of the property damage exclusion. Instead, they debate whether the damage to the old roof and rest of the building constitutes "property damage" at all. Nevertheless, due to the Policy's occurrence requirement, First Financial escapes any indemnification obligation under this alternative analysis as well.

The Court focuses first on the question of whether the injury to Peterbilt's property aside from the old roof constitutes property damage. Both parties agree that "the incorporation of a defective component or product into a larger structure or system does not constitute physical injury to tangible property [in other words, "property damage"], *unless and until the defective component physically injures some other tangible part of the larger system or the system as a whole.*" *Times Fiber Commc'ns, Inc. v. Travelers Indem. Co. of Ill.*, No. CVX05CV030196619S, 2005 WL 589821, at *6 (Conn. Super. Ct. Feb. 2, 2005) (emphasis in original). In *Fiber*, the Connecticut Superior court court held that the installation of defective cable, which did not harm any other property, did not constitute property damage for the purposes of a similar insurance contract.

Unlike the cables in *Fiber*, Peterbilt argues, the new roof caused harm to "*some other tangible part of the larger system*." *Id.* (emphasis in original). Not only did the installation of the new roof damage the old one, Peterbilt alleges in its original complaint that "[i]n March 2004,

12

shortly after the installation, said roof began to leak, causing damage to areas of the building including, but not limited to the interior of the building, the roofing insulation and substructure, and the corrugated metal decking." Notice of Removal [doc. # 1] Ex. A ¶ 8 (Compl.). Peterbilt claims that the Superior Court recognized these additional injuries in awarding damages when it stated that the installation of the new roof "made the old roof, which leaked far less before the new roof was installed, fail." Statement of Stipulated Facts [doc. # 28-2] Ex. C at 13 (Mem. of Dec.).

First Financial counters that because City Wide's work was on the "roofing system," any damage to the old roof would not constitute property damage because damage to the roofing system does not constitute injury to part of the building (the "larger system"). *See Travelers Cas. & Sur. Co.*, 732 F. Supp. 2d at 365 n.29, 365-66 (finding, under New Jersey law, that installation of a flooring surface that allegedly damaged a subfloor was not covered by the contract, because the work encompassed the entire "flooring system"). First Financial highlights that the damages awarded to Peterbilt in the City Wide lawsuit were for the deprivation of the benefit of the contract and the cost of removal and replacement of the roof, not for any damage to the building. *See* Statement of Stipulated Facts [doc. # 28] ¶¶ 14-16; Statement of Stipulated Facts [doc. # 28-2] Ex. C 12-13 (Mem. of Dec.).

Had the Superior Court specifically ordered damages based on injury to parts of the building other than the old roof, Peterbilt's argument that the damage to the building as a result of City Wide's action was property damage would be more persuasive.[5] However, although the decision resolving the City Wide lawsuit's damages discusses a number of the injuries to the

---

[5] Peterbilt's counsel conceded at oral argument that only the roofing system was damaged as a result of City Wide's actions. He argued, however, that damages in the City Wide lawsuit were awarded in part because the old roof was made worse by City Wide's installation of the new roof.

building that occurred as a result of the leaking roof, *see* Statement of Stipulated Facts [doc. # 28-2] Ex. C at 6 (Mem. of Dec.), the Superior Court never allocates damages based on these injuries, *see id.* Ex. C at 13-17 (Mem. of Dec.). Instead, the suit was characterized as intended to recover:

> all monies paid to City Wide to install, guarantee and perform warranty repairs upon the new roof; the full cost of removing the new roof and the old roof below it and replacing them with another roof which will in fact be watertight and trouble free, as defendants had promised; and attorney's fees under CUTPA for the prosecution of this action.

*Id.* Ex. C at 2 (Mem. of Dec.). Recalling that Peterbilt's suit under the direct action statute is only for that which City Wide could have recovered from First Financial had City Wide paid the judgment, Peterbilt cannot now recover compensation for the injury to the building. Because City Wide would not have been able to argue that the damages were for property damage due to injury to other areas of the building, Peterbilt may not make a similar argument now.

As the City Wide suit did not award Peterbilt damages for injury to parts of its property other than the old roof, the remaining inquiry under the alternative analysis is whether the damage to the old roof alone constitutes "property damage." Although First Financial relies on *Travelers* in arguing that it would not, First Financial misreads the case: the *Travelers* court actually found that similar damage to one component of a system—in that case, a flooring system rather than a roofing system—"falls squarely within the meaning of 'property damage.'" *Travelers*, 732 F. Supp. 2d at 365.

Fortunately for First Financial, even if the damage to the old roof was found to be technically property damage, the Policy only insures property damage "caused by an 'occurrence.'" Statement of Stipulated Facts [doc. # 28-1] Ex. B at 30 (Commercial General Liability Coverage Form). The Policy defines an "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Ex. B at 41 (Commercial General Liability Coverage Form). The parties agree that Connecticut courts have held that an accident means an unintended occurrence, *see Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 590 (1990); that the "accident" is the event causing the injury, not the cause of the event, *see Commercial Contractors Corp. v. Am. Ins. Co.*, 152 Conn. 31, 42 (1964); and that an "occurrence" means "something that takes place," especially "something that happens unexpectedly without design," *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 307 (2001) (quotation marks omitted). Faulty workmanship does not constitute an accident or occurrence. *See Scottsdale Ins. Co.*, 742 F. Supp. 2d at 246; *Times Fiber Commc'ns, Inc.*, 2005 WL 589821, at *7; *Massad v. Royal Indem.*, No. 525998, 1995 WL 410784, at *3 (Conn. Super. Ct. July 6, 1995).

Peterbilt argues that the leakage was an unintended occurrence, the cause of which was the installation of the new roof, and that the Superior Court awarded damages for the leaking.[6] Alternatively, Peterbilt argues that a finder of fact could reasonably determine that the leaking of the roof constituted "something that happens unexpectedly without design." *Metro. Life Ins. Co.*, 255 Conn at 307 (quotation marks omitted). First Financial responds by noting, again, that the Superior Court did not award any damages for injury to the building due to leakage; rather, damages were awarded for breach of contract and replacement of the roof due to faulty workmanship. First Financial reasons that, because these damages were all awarded for faulty workmanship, Peterbilt is not owed any damages caused by an occurrence.

---

[6] At oral argument, Peterbilt's counsel conceded that the claim for damages due to breach of contract ($25,000 plus interest) would not succeed, as faulty workmanship was the basis for such damages. He maintained, however, that the leakage was an occurrence, as it happened as a result of that faulty workmanship.

As described above, the only relevant property damage was the damage to the old roof. This was caused by City Wide's intentional actions. The leakage may have been unintended, but it did not cause the injury that resulted in the awarded damages in the City Wide lawsuit. *See Scottsdale Ins. Co.*, 742 F. Supp. 2d at 246 ("[A]lthough an accident can be a consequence of faulty workmanship, faulty workmanship alone is not an accident."); *J.Z.G. Res., Inc. v. King*, 987 F.2d 98, 102-03 (2d Cir. 1993) (while applying New York law, finding that "accidental" mistakes in workmanship constituted faulty workmanship, not an occurrence). Even if the Policy did not include the other exclusions, this requirement would bar Peterbilt's recovery.

### D.

As the property damages exclusion, the occurrence requirement, and the punitive damages exclusion would have prevented City Wide from bringing suit to recover monies from First Financial, Peterbilt's claim under the direct action statute also fails. There is therefore no need to address the applicability of the "Damage to Your Work" or Cooperation Clause exclusions, especially as there is currently no Connecticut case law on the former and as the latter requires a factual determination of whether First Financial was prejudiced by City Wide's failure to appear at its depositions and subsequent hearings. *See Arton v. Liberty Mut. Ins. Co.*, 163 Conn. 127, 133-34, 135 (1972).

### V.

Peterbilt's estoppel claim fails because it did not conduct due diligence before relying on the document produced by Tacinelli. As a result, under Connecticut's direct action statute, First Financial is able to employ the defenses it would have used had City Wide brought a similar

case. As the Policy includes numerous exclusions and requirements, and as at least some of these would bar a suit by City Wide, Peterbilt's suit also fails.

Accordingly, the Court GRANTS First Financial's Motion for Summary Judgment [doc. # 25]. **The Clerk is directed to enter judgment for Defendants and to close this file.**

**IT IS SO ORDERED.**

_____
Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **<u>September 20, 2011.</u>**